Fred I. Nystrom, Jr., Laura M. Nystrom v. Commissioner.
Nystrom v. Commissioner
Docket No. 3699-67.
United States Tax Court
T.C. Memo 1969-201; 1969 Tax Ct. Memo LEXIS 98; 28 T.C.M. (CCH) 1050; T.C.M. (RIA) 69201; September 29, 1969, Filed Fred I. *99 Nystrom, Jr., pro se, 6507 Oakatube Ave., Seattle, Wash. Lee A. Kamp, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies in the income tax of petitioners have been determined by the Commissioner for the taxable years and in the amounts shown below: Year
Deficiency
1964
$375.98
1965
388.91
The issues to be decided are: (1) Whether certain advances made by petitioner to his controlled corporation are bona fide loans or contributions to capital; (2) If the advances are loans, whether they are business or nonbusiness debts; and (3) If the advances are loans, whether the loans became worthless or partially worthless in the taxable years 1964 and 1965. Findings of Fact This case was submitted on a complete stipulation of facts pursuant to Rule 30. The stipulation and the exhibits attached thereto are incorporated herein by this reference and are adopted as our Findings of Fact. A summary of the relevant facts is set forth below. Fred I. Nystrom, Jr., and Laura M. Nystrom are residents of Seattle, Washington, and filed joint income tax returns for the calendar years 1964 and 1965 with the district *100 director of internal revenue at Tacoma, Washington. In May 1967, petitioners filed amended 1964 and 1965 joint income tax returns with the district director of internal revenue at Tacoma, Washington. For convenience, Fred I. Nystrom, Jr., will hereinafter be referred to as petitioner. Lany Corporation (sometimes hereinafter referred to as Lany) was incorporated under the laws of the State of Washington on April 12, 1961, for the principal purpose of selling and servicing residential 1051 garbage disposal units. It kept its books and reported its income on the basis of a fiscal year ending March 31. The original investment in Lany was $50,000 of paid-in capital stock, all of which was owned by petitioner except for two qualifying shares. Petitioner was president of Lany during the corporation's entire life. Of the $50,000 capital contribution, $46,568.44 was used to purchase goodwill. The costs of incorporation were $352, leaving $3,079.56 available to purchase fixed assets and for use as working capital. In September 1962, Lany's principal, if not sole supplier of disposal units, the Rinse-Away Corporation of America, notified Lany that they were discontinying sales of Rinse-Away *101 disposal units to Lany. In March 1963, petitioner negotiated with the vice president of In-Sink-Erator Manufacturing Company for the franchise in the State of Washington for the sales and service of the latter company's Garb-Away disposal units. It was known since the latter part of 1962 that the existing factory-authorized service agency for In-Sink-Erator Manufacturing Company was not performing satisfactorily and was selling and servicing competitive merchandise. No written agreement was executed by the two companies during 1963 and subsequent years, but there was an understanding between both parties that Lany would be the exclusive sales agent for Garb-Away disposal units in the State of Washington. Discussions concerning the appointment of Lany as the factory-authorized service agency continued from 1963 through a part of 1966. Petitioner has estimated that if appointed factory-authorized service agency, Lany's revenues would increase approximately $25,000 annually. In June 1965, Lany vacated the office and shop premises it had been renting and continued to operate its business from the basement of petitioner's home. The premises were vacated due to Lany's inability to pay *102 rent. During the same year and continuing at least through January 1968, petitioner unsuccessfully sought salaried employment from a number of sources but was unsuccessful due to his age. He was born March 19, 1905. Beginning in the first year of operations and continuing through March 1, 1967, petitioner made advances to Lany. The advances were primarily of cash to enable Lany to pay current expenses and continue operating. The advances were not evidenced by promissory notes or other evidences of indebtedness. There was no fixed maturity date, nor was there any provision for interest. No interest was in fact ever paid, accrued, or otherwise reflected on Lany's books. The advances and other related transactions between petitioner and Lany were recorded on the corporate books in the account "Loans and Advances from Stockholders (F. I. Nystrom, Jr)." Petitioner has not received any remuneration from the corporation other than periodic withdrawals from the corporate petty cash fund. At the end of each corporate fiscal year, the excess of the petty cash receipts over disbursements was charged to petitioner's drawing account, which in from Stockholders (F. I. Nystrom, from Stockholders *103 (F. I. Nystrom, Jr.)" account, thereby reducing the balance due to petitioner from the corporation. The amounts of the advances and partial repayments, operating results, and statements of financial position of Lany are shown below: *10 ANALYSIS OF ADVANCES AND REPAYMENTS *10 Loans and Advances from Stockholders (F. I. Nystrom, Jr.) Account *10 Fiscal years 1961-1964: $3,934.99 [1]
Date
Fiscal year 1965
Debit
Credit
4/30
April advances
$400.00
5/31
May advances
400.00
7/31
July advances
570.00
8/31
August advances
223.85
8/31
Reimburse F.I.N., Jr., for 8/1/64 loan
$ 100,000
6/11
Reimburse F.I.N., Jr., for ladder
19.20
3/31/65
Reimburse F.I.N., Jr., for parts, etc.
63.96
1/25/65
Advance by F.I.N., Jr.
250.00
2/15
F.I.Nystrom loan to Corp.
125.00
2/27
F.I.Nystrom loan to Corp.
150.00
3/31/65
Close Drawing Account
1,571.59
Date
Fiscal Year 1966 Description
Debit
Credit
6/10/65
Advance - F.I.N.
$100.00
11/13/65
Advance - F.I.N.
100.00
3/31/66
Close Drawing Account
$1,396.57
Date
Fiscal Year 1967 Description
Debit
Credit
5/16
Mrs. Nystrom - Advance
$ 75.00
10/12
F.I. Nystrom - Loan to Corp.
200.00
11/11
F.I. Nystrom - Loan to Corp.
85.00
12/12
F.I. Nystrom - Loan to Corp.
400.00
12/18/66
Mrs. Nystrom - Loan to Corp.
400.00
5/27 - 6/28
Repay Mrs. Nystrom
$ 75.00
100.00
12/31/66
Repay Mrs. Nystrom
300.00
1/23/67
F.I. Nystrom - loan
200.00
3/1
F.I. Nystrom - loan
400.00
3/31/67
Close Drawing Account
1,187.33
*104 1052 *10 LANY CORPORATION'S STATEMENTS OF INCOME AND LOSS FOR FISCAL YEARS APRIL 1 - MARCH 31
1962
1963
1964
1965
1966
1967
Gross Sales
$4,915.05
$9,935.01
$8,450.36
$7,899.11
$6,206.19
$10,036.50
Cost of Goods Sold 3,088.72
5,888.00
4,551.72
4,287.64
3,202.86
6,899.42
Gross Profit
1,826.33
4,047.01
3,898.64
3,611.47
3,003.33
3,137.08
Operating Expenses 6,281.53
3,497.66
4,021.39
6,574.00
3,026.10
4,855.78
Taxable Income (or Loss)
(4,455.20)
549.35
(122.75)
(2,962.53)
(22.77)
(1,748.70) *10 LANY CORPORATION'S STATEMENTS OF FINANCIAL POSITION FOR FISCAL YEARS ENDED MARCH 31
1962
1963
1964
1965
1966
1967
Current assets
$ 1,640.75
$ 1,837.82
$ 1,545.25
$ 670.48
$ 484.46
$ 825.64
Fixed assets
1,461.73
1,866.10
2,670.70
1,711.85
1,466.06
963.23
Intangible assets [1]
46,920.44
46,920.44
46,920.44
46,920.44
46,920.44
46,920.44
Total assets 50,022.92
50,624.36
51,136.39
49,302.77
48,850.96
48,709.31
Current liabilities to outside credi- ors
191.38
595.22
556.88
309.56
377.59
1,162.03
Loan from stock- holders
4,286.73
3,934.99
4,608.11
5,138.53
4,641.46
5,464.07
Capital stock
50,000.00
50,000.00
50,000.00
50,000.00
50,000.00
50,000.00
Earned surplus (deficit) (4,455.20)
(3,905.85)
(4,028.60)
(6,145.32)
(6,168.09)
(7,916.79)
Total liabilities and capital 50,022.92
50,624.36
51,136.39
49,302.77
48,850.96
48,709.31
*105 In July 1966, Lany was informed that In-Sink-Erator Manufacturing Company was unable to fill Lany's orders for Garb-Away disposal units. Lany continued negotiations with In-Sink-Erator for the appointment as factory-authorized service agency until November 1966 when it was finally notified that it would not be appointed. The corporation ceased operations after its fiscal year ended March 31, 1967. On his income tax returns filed for calendar years 1964 and 1965, petitioner claimed 1053 the unrepaid advances as business bad debt losses of $4,601.11 and $3,038.58, respectively. In May 1967, before receiving his statutory notice of deficiency, petitioner filed amended income tax returns in which he changed his claimed business bad debt losses to $2,650 for 1964 and $3,388.53 for 1965. Ultimate Finding The advances claimed by petitioner on his 1964 and 1965 income tax returns as business bad debt losses were contributions to capital and were not bona fide loans giving rise to a real debtor-creditor relationship. Opinion Section 166(a) of the Code [1] allows as an ordinary loss deduction: (1) any debt *106 which becomes worthless within the taxable year, or (2) a portion of a debt charged off which becomes partially worthless within the taxable year. [2] Subsection (d) removes nonbusiness bad debts from the application of subsection (a) and provides that losses from nonbusiness debts which have become totally worthless during the taxable year shall be treated as short-term capital losses. However, before either of the above subsections of section 166 are applicable, there must be a bona fide debt. [3]
If it is determined that petitioner's *107 advances to Lany were contributions to equity capital rather than valid loans, then petitioner is limited to capital loss treatment if the stock of his corporation has become worthless, [4] If, on the other hand, it is determined that the advances were loans, then it must be determined whether the loans were business or nonbusiness loans. If the loans were business loans, petitioner is entitled to ordinary loss treatment on the total amount of the loans or that portion thereof, if any, which became worthless during the taxable year. [5] If the advances were nonbusiness loans, petitioner will be limited to capital loss treatment, but only if the debts became worthless during the taxable year. [6]
Respondent contends that the advances made by petitioner to Lany were not bona fide loans, and alternatively, that the advances were nonbusiness in character and were not totally worthless in 1964 and 1965. Petitioner *108 contends that the advances were business bad debts and that they were at least partially worthless in 1964, and became totally worthless in 1965. The first question we must decide is whether the advances by petitioner to Lany were contributions to equity capital or bona fide loans. This is essentially a question of fact upon which the petitioners have the burden of proof. (C.A. 6, 1964), affirming a Memorandum Opinion of this Court. To qualify as bona fide loans, the advances must have created a binding obligation on the part of the corporation, (C.A. 7, 1942), reversing , and there must have been a reasonable belief at the time the advances were made that they would be repaid regardless of the success of the business. (C.A. 2, 1957), remanding a Memorandum Opinion of this Court; a Supplemental Memorandum Opinion affirmed (C.A. 2, 1959). Petitioner has failed to satisfy the latter condition and is therefore precluded from claiming as loans any *109 of the advances made after filing his 1964 income tax return. As indicated by his return, petitioner concluded that all advances made by him through the calendar year 1964 were worthless, a conclusion with which we concur. We have found no facts subsequent to the filing of his 1964 return which would reasonably have indicated any prospect of repayment of subsequent advances. It is significant that Lany continued to suffer operating losses in subsequent years. Also, as time progressed, the hope that Lany would be appointed 1054 factory-authorized service agency became increasingly dim. When petitioner filed his income tax return for the calendar year 1965, he claimed as bad debt deductions all the advances he had made during the calendar year 1965. Further, as late as May 1967, petitioner filed an amended income tax return for 1964 in which he claimed such advances were one-half worthless. It is obvious that petitioner did not expect repayment unless the business was successful, an expectation which was in fact never realized. We hold therefore, that the advances made by petitioner to Lany after he filed his 1964 income tax return were contributions to equity capital rather than *110 loans. The next question we must decide is whether the advances made prior to the filing of petitioner's 1964 income tax return were contributions to equity capital or loans. There are many cases which have dealt with the basic question involved herein, some of which support respondent's contention and some of which support petitioner's contention. These cases have cited numerous factors considered in determining whether stockholder advances are contributions to equity capital or loans, but these criteria are merely guidelines. Our determination must be made in the light of all the facts of the case at bar; no one factor is controlling. , reversing (C.A. 7, 1944), reversing [Dec. 12,931] . The factors cited in prior cases which we feel are material to the case at bar are as follows: (1) Whether expectation of repayment, if any, was tied to the success of the business. (2) Adequacy of initial capital. Tyler, et al. v. Tomlinson, - F. 2d - (C.A. 5, 1969). (3) Use to which the advanced funds were put. *111 (C.A. 7, 1962), certiorari denied . (C.A. 6, 1966), affirming a Memorandum Opinion of this Court. (5) Whether attempts were made to acquire debt capital from outside sources. (6) Whether outside sources would have made such advances under the facts herein. (C.A. 2, 1962). (7) Whether security was given. (8) Whether the advances were subordinated to the claims of other creditors. (C.A. 9, 1960), affirming a Memorandum Opinion of this Court. (9) Whether any instrument evidencing the indebtedness was executed. (10) How the advances were recorded on the corporate books. (C.A. 4, 1962), affirming a Memorandum Opinion of this Court. (11) Whether any repayments were made, (C.A. 6, 1965), affirming . On the basis of the facts herein, considered in the light of the criteria above, we hold that the advances made by petitioner to Lany during the *112 taxable years 1961 through the time of filing his 1964 income tax return were contributions to equity capital rather than loans. Petitioner had no reasonable expectation at the time the advances were made that they would be repaid regardless of the success or failure of the business. Lany reported an operating loss of $4,455.20 for its first year of operations and, therefore, a deficit of $4,455.20 at the end of its first fiscal year. These losses continued and the deficit increased in each of the subsequent years, except 1963. The corporation's working capital position at the end of each fiscal year was such that, aside from liquidating the corporation, petitioner's advances could not be repaid in full unless the corporation was able to generate funds from successful future operations. Further, since the record fails to show the realizable value, if any, of the goodwill or tangible fixed assets, petitioner has failed to prove that the advances could be repaid even in the event of liquidation. Petitioner clearly had no reasonable expectation at the time he made the advances that they would be repaid unless the future operations of the business were successful. The initial capital *113 invested in Lany was $50,000, according to the account "Capital Stock" listed on the corporation's 1962 tax return. Of this amount, $46,568.44 was used to purchase goodwill and $352 was spent as costs of incorporation, leaving $3,079.56 to purchase fixed assets and for use as working capital. The record does not show the exact amounts nor the 1055 purposes to which the funds advanced during the first fiscal year were put, but the account "Loans and Advances from Stockholders (F. I. Nystrom, Jr.)," as shown on the corporation's 1962 tax return, showed a balance of $4,286.73. The relatively small amount of initial capital available, plus the fact that the advances were made during the first year of operations, show that the initial capital contribution was obviously inadequate. The record does not show whether petitioner made attempts to acquire capital from outside sources, but due to Lany's unfavorable financial position and operating results, we doubt whether outside sources would have made loans to the corporation. Regardless, we are certain that no outside creditor would have made loans in the manner and under the circumstances existing in this case. The record does not show *114 whether the advances were secured or whether they were subordinated to the claims of other creditors, but in his brief, petitioner stated that the advances were made in part to pay creditor claims and keep the business going. It is doubtful, to say the least, whether an outside creditor would have made unsecured loans to a business in as poor a financial position as Lany to pay off the claims of other creditors. Under the facts as we interpret them, petitioner was essentially an underwriter of all of Lany's financial requirements. , affd. per curiam (C.A. 2, 1953). We do not find the fact that the advances were recorded on the books of the corporation as loans persuasive in petitioner's favor because of the lack of other indicia of a debtor-creditor relationship such as notes, arrangement for interest, collateral, or specified repayment dates. In like manner, we have accorded the so-called repayments of the advances little weight due to the nature of such repayments. There was no fixed schedule of repayment, the so-called repayments consisting primarily of periodic *115 small petty cash withdrawals. The advances should be treated as additions to petitioner's basis in Lany stock. Since petitioner has not attempted to show the stock has become totally worthless, we cannot determine whether he is entitled to a capital loss deduction for the amount of his basis in the stock. [7]
Since we hold the advances to be contributions to equity capital, we do not reach the subsidiary issues of whether such advances were business or nonbusiness debts and whether such advances were worthless or partially worthless during the taxable years 1964 and 1965. Decision will be entered for the respondent. Footnotes
1. As of March 31, 1964, the account showed a credit balance indicating an amount owed to petitioner of $3,934.99. The figure is a cumulative total of the fiscal years 1962-1964.↩
1. Includes Goodwill of $46,568.44 and Organization Costs of $352.↩
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. Section 166(a)(2) provides that the Commissioner may allow a deduction for that part of a debt charged off when he is satisfied it is recoverable only in part. ↩
3. Income Tax Regs. Sec. 166-1(c). Bona fide debt required. Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166. * * *↩
4. Sec. 166(a). ↩
5. Sec. 166(a)(1) and (2). If the alleged loans are partially worthless, the deduction is subject to the limitations named above, i.e., only to the extent that the debts are actually charged off during the taxable year. ↩
6. Sec. 166(d)(1)(A) and (B).↩
7. SEC. 165(g)(1). General Rule. - If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.↩